22nd case your honors, 209-29 Thomas Fitch v. McDermott, Will and Emery, Dietrich and Dietrich, LLC, and Joseph Dietrich, John Dietrich, and Harris Bank, M.A. On behalf of the F1, Mr. Daniel Torczyk, on behalf of McDermott, Will and Emery, Mr. Stefan Novak, on behalf of Dietrich and Dietrich, LLC, Robert Mark Chemers, and on behalf of Harris, David S. Barrett. Good morning, counsel. Mr. Konachek. Thank you. May it please the court, counsel, with the limited time I have, I am going to try to break the case down into what I see as the main parts of my argument. And the first part, justices, is going to deal with the issue of the Robinson and Ellis decisions. And that's going to be for the original complaint that we filed, counts 1, 2, and 3. Counts 1, 2, and 3 in the original complaint, count 1 was brought by the plaintiffs against the Dietrichs for undue influence. Count 2 was for conspiracy. And count 3 was for aiding and abetting. The conspiracy related to the conduct that was between the Dietrichs and McDermott. And the aiding and abetting is based on the Thornwood case and the cases that flow from that, again, against McDermott and against Dietrich for their mutual conduct together. The trial court here dismissed all three counts. And she dismissed it based on the Section 8.1 of the Probate Act. The court concluded that we did not file these claims within that six-month period that's required under the Probate Act. We argued, and I guess it was sort of, and I'm not claiming any type of brilliance here, but prescient, is what ultimately came out in the Ellis case. That there are circumstances where 8.1 does not and should not apply, where you are seeking a remedy, a cause of action that falls outside the scheme of the Probate Act. What we argued in the trial court was that we're seeking, under a theory of constructive trust based on undue influence, the return of the monies that were paid by the Dietrichs. In other words, what we paid to the Dietrichs, we were seeking an impersonum. And that's what we argued, both in the trial court and in our original appellate brief to this court. Would you be able to file the same type of argument in the Will contest case if you did it in time? Anticipating that question, Justice, we could have only against the Dietrichs, but we could not have against McDermott. And we could not have, under the theories pled in counts two and three, the conspiracy and the aiding and abetting. So as to the first question, yes, against the Dietrichs, a Will contest could have been sought. But I also have a response to that, in that this is where I say that the arguments we made both all before the Supreme Court decision in Ellis, in the trial court and in our original brief to this court, was that we were not seeking to set aside the Will. If we were seeking to set aside the Will, it would have been an in rem, right? We would have said set aside the entire Will, which would have affected not only the Dietrichs, but the other people, the other legatees in the Will. We were focused solely, solely on the return of the monies that were paid to the Dietrichs. And so in response to your question, had this relief been sought under the statutory scheme set forth in 8-1, it would have undone the entire Will. And I don't think Section 8-1 contemplates that. And based on the Ellis decision, where they say you can seek in persona a judgment against a person, I think based on that case now, that what we did was correct, that we don't want to set aside the entire Will. Rather, we're focusing on the two people, Joseph and John Dietrich, the other legatees we have no issue with. And under the Ellis decision, I believe that we can do that in the manner in which we have done it. And I think the court's decision dismissing that under Section 8-1 was incorrect and that it should be overturned. And we should be allowed to pursue these theories. And again, this was at the pleading stage. So whether or not in the end we establish these theories is going to be a question, I guess, for another fact finder. But we should have been allowed to pursue those. Prior to Ellis, was it impermissible to file an in persona case? You know, after reading Robinson, Justice, when I read Robinson, I thought, hey, Robinson sort of helps because the court in Robinson was so restrictive in what it said. It was limiting it to the facts of that case, which were so unusual, because we not only had the people filing outside the six-month period, but they settled the case, right? They accepted money. They settled the case. They said, we're done, and we won't sue you. So there was a release. And when I went back and I looked at Ellis, and I read Ellis, and they said our holding in Robinson was limited to not recognizing the tort action where plaintiffs had an opportunity to contest a probated will but chose not to do so. And then they say and. And subsequently enter into an agreement to take no further action. So in response to your question, I wasn't certain whether or not a cause of action could exist outside 8-1, but I thought that we had grounds consistent with my requirements as an officer of the court to pursue an action outside Section 8-1. I'll try not to ask too many questions because I know you have a lot of issues. The camera's all working. I'm going to move on to Part 2. Could I ask a procedural question? Yes. How many of these counts were dismissed under 6-19, and how many were dismissed under 2-6-15? One count was dismissed under 2-6-15. That was the Harris Bank. And the remaining counts, Justice, were under 2-6-19-A-1 or A-5 or A-9. Under the counts we just discussed, those were all 2-6-19-A-1. I'm going to move on, and I guess apologize because of the way the pleadings went. The first amended complaint, we chose to, when the court dismissed counts 1, 2, and 3 in order to preserve the appeal, we repled those counts, which we have to do. So we have the first amended complaint, and we're now focusing on counts 4 and 5. And these were the counts against McDermott for negligence, Mike Fitch and Thomas Fitch. Count 4 was Mike Fitch versus McDermott. Count 5 was Thomas Fitch versus McDermott. And these were dismissed by the trial court based on the statute of limitation, 2-6-19-A-5. And what the court relied on initially was that the subsection D came into play of 214.3, where it must be filed within six months if there's a probate action. We repled in this first amended complaint, and we repled, in my opinion, so we did not fall within subsection D of 214.3. And the theory that we pled under was both Mike Fitch and Tom Fitch had attorney-client relationship with McDermott. Let me focus this. Explain how McDermott, who was hired by Victoria to prepare an estate plan, would all of a sudden owe some type of duty to the son and the father when they were also representing the son individually for his own estate planning. And I don't think they're representing maybe the fathers. I don't remember. It's the trustee or something like that, or beneficiary of the trust. I'll start with the son because I think there's more of a relationship, I guess, the best way I can describe it, is that at the time that McDermott had prepared the trust documents for Victoria Fitch, it had also been representing Michael Fitch in some estate planning. At the time Victoria Fitch died, the trustee in this instance, Mr. Dietrich and the Harris Bank, the co-trustees, then hired McDermott, the very firm that prepared the estate planning documents, to represent the trustees in the probate and in the trust management of this estate, including the estate taxes, the estate tax work. Mr. Michael Fitch at that time was continuing to receive advice, legal advice, from the McDermott firm as we've pled in the complaint. So we have the McDermott representing Michael Fitch on estate planning, and we have the McDermott firm that had represented Victoria Fitch and continued to represent the trustee. What I argued and what we pled is that creates a conflict of interest when, in this instance, the very plan that McDermott created with the assistance of Joe Dietrich has caused tax liability unnecessarily in the millions of dollars to the estate. It's our theory, and what we believe in that circumstance, is that McDermott, in that circumstance, would have an obligation to his client, Michael Fitch, to explain to Michael Fitch that, hey, our estate plan created an unnecessary tax liability, and they never did that. Would they be violating any confidentiality situation that they had with Victoria? Even though Victoria was deceased at the time? Ultimately, if they have to reveal confidence, this is how this estate plan was created. It may implicate 1.5. We didn't get that far because we never got in discovery, Justice, but I can tell you that Michael Fitch was in on many of the conferences between McDermott and Victoria, so 1.5 would not be implicated in that instance because you have third parties. I don't think confidentiality was raised at the trial court level. No, it wasn't. It was raised in these briefs. But that's the problem, is when you get into that, Justice, then you have the who is the client and who do you owe confidentiality to, who do you owe your allegiance to, and when you have conflicting interests like that, that's the problem. Not only do we have McDermott with an interest in protecting its confidence to the deceased Victoria Fitch, we have McDermott that has a duty to the trustee, we have McDermott that has a duty to Michael Fitch, all of which are going to start conflicting in the way this estate is distributed and the way the trust is handled. Then we have McDermott that's looking out for its own financial interest. Why would it disclose the fact that it created an unnecessary estate tax, all implicating conflict of interest under 1.8 and 1.9 of our rules of professional conduct? And it's based on that that we believe Count 4 should not have been dismissed. Weren't they following Victoria's instructions, though, in setting up the so-called farm estate so it became taxable? The way we pled in paragraph 82 of the second amended complaint, I'm sorry, the first amended complaint, paragraph 82, was that, and this is an allegation in the complaint which has to be accepted as true for purposes of the motion that was brought by McDermott, was that the goal of Victoria Fitch was to minimize the estate taxes. This plan did not, as it's been pled in this complaint, minimize the estate taxes. So I would say, Justice, that that would be a proof issue after the pleadings. But to raise that, argue that, and rule on that in the pleadings at this stage is not right. It's not appropriate because we have to accept the pleaded facts as true. What about Victoria's right to revoke that part or revoke any part in her lifetime that she never did? Again, I think that would go to discovery and proofs at trial as to what was said by Victoria, to whom, when she said it, and did she understand this complicated estate plan? Did she know that by setting up the Farm Preservation Trust she was going to cost the estate close to $5 million in taxes and lost income? Did she know by putting the LP, the limited partnership, into the trust for the farm, into the family trust, that you have an asset that sits there and doesn't produce a dime of income, and then when Mr. Fitch dies and this asset is still sitting in the family trust, it does nothing other than now the family is forced to sell an asset that we pled clearly Victoria Fitch wanted Mike to receive. You have an asset sitting in a trust that nothing can be done with it in order to create income other than its sale. And that I don't think McDermott realized when they created this very complicated, unwise plan of the effects that it would have as the trust proceeded after Victoria Fitch's death. And that's pled in the complaint, and that should have been accepted as true by the trial court, and it should have been fleshed out in this government. Is it not true that Victoria is now deceased? And in order to establish the claims that you're making, you're going to have to have conversations brought in as to whether or whatever took place relative to whatever her wishes could have been. I believe in a sound fiscal government, and I want to pay as much taxes as I possibly can. How do you know that she didn't say that? If the Dead Man's Act kicks in, where are we going with this? Justice, the Dead Man's Act would not be applicable in this instance because Victoria Fitch is no longer an interested party, and I don't believe under that set of facts that the Dead Man's Act would come in because in every probate action you would have that possibility. But we always end up hearing by necessity what the goal of the deceased was and whether that carried out the plan. I'd also say this, is that in giving advice to the client under this circumstance, a lot of the information comes from what the attorney explained and what the attorney tried to accomplish. Did a reasonably well-qualified attorney say, if we do this, you will suffer taxes or your family in the amount of $5 million? Was that explained? And did Victoria Fitch, was she given the opportunity to make an informed decision in that circumstance? I think in that pattern, Justice, that the Dead Man's Act would not be implicated. Tell me if I'm wrong, was the farm put into a limited partnership type of agreement that the plan was to expand it and acquire other property? No, it wasn't. Oak Knoll is a 102-acre farm that's been in existence since the late 1800s, and it's been owned within this family, the 102 acres, and there's now houses. We're going beyond, but I'm very familiar with the area. There's now houses that are all around the farm itself. So, Justice, the only thing that could be done would be you could sell the farm and then a developer would come in and develop it. But it was not for the purpose of acquiring more properties. It was for the purpose of holding this particular piece. Counsel, you will have some additional time on rebuttal to finish up. I didn't even see the clock. Am I done? You're done. Okay. Right now, and then you'll come back. All right. Okay. Thanks. All right. And this is Mr. Novak? Steve Novak, Your Honor. Good morning. Good morning. And may it please the Court. Your Honors, only two of the counsel at the table will be arguing today, and we've decided to divide up our 20 minutes, which I understand you graciously gave us 14 for me and six for Mr. Barrett. Mr. Chemers is going to stand on his brief and also adopt those of my arguments coming to his clients as well. And, of course, all three of us will rely on arguments in the brief that we don't get a chance to repeat today. Your Honors, I'd like to start with the undue influence counts, counts one through three, and make no mistake about it, each and every one of those counts was for undue influence. The conspiracy count the counsel mentioned is entitled Conspiracy to Unduly Influence. The aiding and abetting count was Aiding and Abetting Undue Influence. And as you'll see, that's extremely important. Judge McIntyre properly dismissed all three of the counts on jurisdictional grounds, and we urge today an alternative ground applicable only to McDermott, which is the statute of limitations. Now, with respect to jurisdiction, of course, it all starts with the Robinson case. That's the seminal case. And that case made three points. One, claims of undue influence in the making of a will must be brought in a will contest. If not, the will is deemed valid for all times and for all purposes. And at that point, no court, no court has jurisdiction to hear an undue influence attack on a will. Now. Would you explain the subtle differences between what you just said about Robinson and what Ellis? Judge, what Ellis did, Ellis actually reaffirms the general principles and rule of Robinson, but it says that there's an exception. The exception, based on the unique facts of that case, and just if I can take two seconds to do this, Ellis lets the whole world know it's not changing the law, it's not changing Robinson. It says, we emphasize that our holding applies to the particular parties under the circumstances of this case and does not extend to a plaintiff who fails to bring a court claim within the period for filing a will contest where the will contest remedy was available. Now, what were those unique facts which were present in Ellis, not present in Robinson, and not present in our case? One, that the will contest remedy was not available in that case. Why? Because the party challenging the will had no idea that it was even in a prior will. Shriners was a public charity. It wasn't an heir. It didn't know the testator, and it didn't learn about this until years after the time for filing a will contest had expired. Secondly, a will contest would not have provided a remedy, not because who the parties were, to your question, Justice, but because there were inter vivos transfers that were being challenged, and a party cannot challenge inter vivos transfers in a probate proceeding. Third, the tort claim that was brought in Ellis, unlike the tort claim brought in Robinson, and unlike the tort claim brought here today, was not for undue influence. It was tortious interference. Those three exceptions led Ellis to make the limited, unique ruling that it did. And so when you take Ellis and Robinson together, as this court must interpret it, both those cases, they provide that if the plaintiff had a timely notice of the will and the expectancy they're under, and could challenge the transfers in a will contest, it has to be done by will contest, and there's no jurisdiction elsewhere. That's exactly the case here. Plaintiffs learned of the will and its contents on May 26, 2005, a full seven months before the January 8, 2006 deadline to file the will contest. That's a fact that was established on 2619 unopposed in the court below. There was no allegation in the pleading and no request to amend to add this kind of an allegation that the plaintiff somehow didn't know they could file a will contest, didn't know what happened to the farm, didn't know about these tax consequences, or were in any way prevented from filing a will contest. They never asked to amend for this. They didn't present it below, and they've waived it in this appeal. Also, Your Honors, so that's the adequate notice. I think the term is forfeited rather than waived. Waiving is an intentional rendering up of a right, whereas a forfeiture is not necessarily a volitional act. If I may amend to state that. I'll vote to give you two more minutes after this speech. Yes. You'll be tested at the end of the oral argument. Thank you. I guess the grade will come out in an opinion. So the will contest was available. Now, what about the second prong that it would provide a remedy? Well, of course it would. Of course it would. These counts address only the monetary bequests that were made to the Dietrichs. If a will contest set that aside, that money would not have gone to the Dietrichs. There would have been no damage to anybody because the money would have still been in the estate. That would moot any need to have a fancy conspiracy claim or an aiding and abetting claim because conspiracy with what? Aiding and abetting what? If the will contest is successful, the bequests fall completely. Total remedy is available. So under Robinson and Ellis, and I emphasize both cases, there's simply no jurisdiction for these undue influence counts. There was one count, according to appellate counsel, that was a 615. So the 619 wouldn't apply. So would you address that or is other counsel going to do that? That's counts four and five. And, in fact, the dismissal under those counts was for two reasons. Initially, statute of limitations 2619. But after the amendment, 2615 for failure to state a claim. And I'm going to get there. You are opposed to other counsel? I am. I am. There's a second ground why the undue influence counts don't apply to McDermott. This applies only to McDermott, and that is the statute of limitations. We argued statute of limitations below as to all four counts against McDermott. The court agreed with us on counts four and five of the original complaint, but did not reach the question of statute of limitations on the undue influence counts because of a finding of no jurisdiction. However, this court can affirm on that alternative ground because it's supported by the record. And so I'd like to address that very quickly. The statute of limitations is a statute that's applicable only to lawyers, and 214.3D is the one issued here. It's a repose period that applies where two elements, only two elements need to be established for it to apply. The first element is where the injury does not occur until the death of the party for whom legal services were provided, in this case, Virginia. These bequests, of course, didn't take effect until she died. The injury couldn't have occurred until she died, so that prong is satisfied. And then the will has to be admitted to probate within two years of that time, and here it was within a few months. Both elements apply. Therefore, this case had to be filed before the later of the time for filing claims against the estate or contesting the will. That date was January 16, 2006. This case was not filed until more than a year later. January 25, 2007. Therefore, it's barred by the statute of limitations. And, judges, the Wackrow case, Illinois Supreme Court, very recent, 2008, applied that statute exactly to the situation like this. I suggest that the Court need only read that case. For additional authority, this district's own case in Palomaro's, P-A-L-O-M-A-R-O-S, came out the exact same way. There's really no dispute over it. The only thing that plaintiff argues is that this section can be told by fraudulent concealment. Well, we don't know for sure if that's really the law. There's been no cases that have addressed whether this were opposed, is subject to a fraudulent concealment exception. But we don't need to get there. Why? Fraudulent concealment was not pled. It was not pled in the undue influence counts or the other two counts originally. When the Court dismissed on statute grounds counts 4 and 5, she did it without prejudice, giving them an opportunity, if they could under Rule 137, to allege fraudulent concealment. They amended counts 4 and 5 but did not change anything by adding a fraudulent concealment allegation. In fact, as counsel has conceded here, what he did is switch the time period of the alleged wrong from before death, i.e., wrongful drafting or undue influence, to negligent advice after death. So fraudulent concealment has never been in this case. There's never been a request to amend further to do it. So that's a dead issue. And the whole five pages of the reply brief on the Deluna case is completely and totally irrelevant. All that case deals with is in a situation not to 14.3d but c, where fraudulent concealment is relevant. It talks about how you do it and what you plead. It's not pled in this case. So the Court need not reach it. Now, if there are no further questions on the undue influence counts, I'll turn to counts 4 and 5, the so-called negligence counts. These counts were originally pled as negligent drafting of the will. That was thrown out on statute of limitations ground, again, with leave to amend if they could do fraudulent concealment, which they did not. They abandoned that. They went to an allegation that because McDermott also represented Thomas and Michael individually, parenthetically, on unrelated matters, there was a duty to tell them that McDermott screwed up, made a mistake in what it did, and guess what? You've got a claim against us. The Court threw that out under 2615, finding that there was no duty to advise those gentlemen of their own negligence or claim because of two reasons. One, the allegation of attorney-client relationship related to their own estate plans and their own prenuptial agreement having nothing to do with Virginia's plan. And so there's no duty that they were retained to perform to tell them about what happened with Virginia's will or whether there's a claim under Virginia's will. Secondly, the Illinois law is clear that lawyers don't have a duty, unless they're hired to do it, to tell their clients that they've made a mistake and that there's a malpractice claim. Now, they rely on this Keefe case. Keefe said that a lawyer hired to do a workers' compensation claim on a given accident also had a duty to tell the client about other remedies for the same accident. That case doesn't apply because in our case, the relationship with Thomas and Michael was on a different matter, not the same, not Virginia's will, totally different matter. We cited two California cases to prove the point. One case was just like Keefe and said a lawyer had a duty to talk about other claims. But the second case came along and said, but that doesn't apply where the other claims would be against the lawyer, which is what they're saying here. In their appellate briefs, they come back to now trying to gerrymander counts four and five, back to the original complaint, the pre-death negligence. Two problems there. One, they waived it. They pled over. They filed an amended complaint that didn't reallege that. And to see that, just compare paragraph 78A of the original complaint, which complained, which said that McDermott breached the duty in drafting the prior will to 78A of the second, is it 79? I'm sorry, 79A of both. And the second one is all about what happened after death. So this court, in the Skerin case, Skerin Custom Homes, just decided in 2009, Justice McLaren was on the panel, didn't write the opinion on the panel, said that for a man that don't reallege what was in the first complaint, you're not allowed, I don't remember if waiver is the right word, but not allowed to then ask the reviewing court to go back to dismissal of the original complaint. It's more of an abandonment. Okay. So for that reason, that argument fails. And then secondly, even if you were to consider it, the statute of limitations still applies. Their argument that there's something different is they're saying, well, but we're a third-party beneficiary, so 214.3D doesn't apply because you did the work for us in addition to Virginia. Well, again, whack-a-mole. Illinois Supreme Court, 2008, that's exactly what the plaintiff said. Yes, we filed after the six-month period, but we were a third-party beneficiary. We weren't the testator. And can I finish this thought? And the Supreme Court said, no, no, no. The work was done for the testator, so that prong of the statute applies only to the testator. The injury was not until the testator's death, again, the second element of 214.3D. And finally, the court said, if we were to agree with that argument, we have to hold open the states, and the claims against the states would never be barred until the last beneficiary to die died. And 214.3D is designed to give certainty, the six-month window of certainty. And so it rejected that argument. Thank you. Thank you very much, Your Honor. Mr. Baird? Yes. Why don't we just give you an additional five minutes, even though the time has expired? Okay, thank you very much. May it please the court and counsel, again, my name is David Baird. My client is Harris, who is the co-executor of Victoria Fitch's will and the co-trustee of her trust. The sole pleading that is directed at my client is count eight of the second amended complaint. That's the only order that's before you on appeal, the only arguments that have been made on appeal. In that count, the plaintiff is Thomas Fitch, and in that count, the allegation is that Harris failed to sue McDermott Law Enumery for negligent drafting of the estate plan. The court properly dismissed that complaint under 2615 with prejudice, and it did so for a very good reason, and that is that there is no allegation anywhere in the second amended complaint or in any pleading filed by the plaintiffs in this case that Harris knew or should have known anything about communications regarding Victoria's intent. Harris had no involvement in any of the estate planning preparation, had no communications pre-death with any of the attorneys or with the Dietrichs. Are you saying that as far as your client is concerned, that it was Victoria's secret? Exactly. Exactly. There's no basis upon which an executor or a trustee can know what is going behind a testator or a settler's intentions. They claim that there's apparent negligence simply by virtue of the fact that this Farm Preservation Trust has a $3 million bequest. It's to somebody other than the surviving spouse, and therefore, there's an estate tax associated with it. But again, Harris said no, is not privy to any communications that went back before her death with any of the advisors, the people who prepared the estate plan. We don't know why she provided for this, how it fits into her overall plan. There's no information provided to Harris as to the fact that, as they now claim, that tax avoidance was an overriding goal. It's not alleged that Harris had any information about that. So there's simply no basis upon which Harris could have known that that was a negligent act, the preparation of that aspect of the estate plan. The other aspect that they complain about is that these partnership units and this limited partnership that owns the family farm are distributed to the marital trust. There's no allegation in the complaint as to damage, as to what damage that caused. And by their own theory, it's preferable to have assets distributed to a trust, to the marital trust, because it's free of estate taxes, or at least defers to estate tax. So that's a more beneficial aspect. But again, Harris was not privy to any communications regarding that disposition. How would it know what her intentions were? It's important to note that Victoria is not alleged to have lack of capacity, that she didn't understand the terms of the documents she signed. It's the law in Illinois that there's a presumption that a testator or settler understands the provisions of their estate documents when they sign them. Nothing asserted to the contrary here. Clearly, she knew what she was doing. The record before you makes that clear. To assert against a trustee or an executor on this set of facts, that they should be suing the professional who prepared the estate plan, puts the executor or that trustee in an untenable position. Because you're being forced to second guess why things were done a certain way. In effect, you would be asking or directing executors and trustees to be suing estate planners just because they put a request to somebody other than a surviving spouse. Because those are going to be taxable. We don't know why Victoria wanted her son to have a $3 million trust. There probably were lots of good reasons. But they were her reasons. They were her secret. And therefore, the court properly dismissed. That dismissal was with the prejudice. It was. Yes. And counsel was asked. Well, I'm sorry. Counsel never asked to amend the complaint and did not contest it with prejudice dismissed. I think the record's clear on that. Thank you. Mr. Konechuk. If you don't mind, can I start with the Harris portion? Any portion you need. On the 2615, I wasn't asked by the trial judge about the dismissal with prejudice. Look, the dismissal was with prejudice. She said, you're done. I've given you two tries. And she dismissed this count eight with prejudice. There was no, do you want to replead? You can replead. It was over. And I appealed, which I have the right to do. Here's where the disconnect occurs, is everything that Mr. Barrett has argued to you is all factual information that would come out and be decided by a trier of fact, not by a court in a 2615. The judge tried this case, in essence, in her own mind. What facts did you allege in your complaint, specific facts that would? Paragraph 117, A, B, and C. In those paragraphs, I allege how the trust was set up in a manner which caused the tax consequence, which, you know, we're sitting here saying, well, maybe she wanted to do that. Maybe she wanted to have a tax consequence. That's not the way we've pled it. We've pled it as that the tax consequence was adverse. It shouldn't have happened. The plan could have been done without the tax consequence. It could have accomplished her goals without having a $5 million tax. How did Harris get involved in that structure? Because that's going back quite a way. It is, one way and one way only. When a trustee takes over an estate like this, and they're paid, and this was a cash cop. It was a $60 million estate, and the professionals were making a lot of money to administer this as co-trustees. So they were paid well to do a job. And one of the jobs as a trustee is you have to marshal the assets of that estate. You have to make sure that the estate is producing. They have to invest these assets. They have to properly invest. That's all the duties that are incumbent upon the trustee. Well, if the estate has been damaged by virtue of somebody's negligence, the trustee, the law is clear, has a duty to make sure that that claim is prosecuted and pursued. For Harris to say, well, how did we know what she wanted? How did we know just because this money is given to somebody? The money wasn't given to a somebody. It was given to a something, a Farm Preservation Trust. It was not given to Michael Fitch. It was not given to any of the Fitches. It was put in a trust to supposedly preserve the farm, but in doing so, it created tax implications that were absolutely unnecessary, and the same thing could have been done by putting that money in the marital trust and having certain provisions as to how it should be spent on the farm, and you would have avoided all the tax consequences. In a will contest, would you have made the same arguments? Not against Harris. That clearly wouldn't have fallen within, because this was something— I'm talking about the arguments related to a rational human being wouldn't set up an estate like this because the implications of taxation on the estate are onerous. Would you have made that argument in a will contest? No, I think the will contest, Justice, would have been only focused on the undue influence, the fact that you had Joseph and John Dietrich that had been the financial advisors for this family going back 30 years, and they received a bequeath. They had that close, tight fiduciary relationship, and they received a bequeath under the very plan that they developed in the amount of $1.2 million. I think that, Justice, would be the only thing you could argue in the will contest. McDermott's negligence would have to be necessarily outside of the will contest, and it would be a malpractice action that would be brought. And that's something that the trustees, Dietrich and Harris Bank, would have to recognize and pursue. Why they didn't and all that, Justice, that's a question for a fact-finder, not for a judge on a 2-6-15. 1-17-A-B-C spells out what the negligence was. And certainly there was no reason for knocking us out with prejudice. Harris had answered the first complaint. They didn't move to dismiss until the second. So we had theoretically, I think, one shot on the pleading against Harris, and then Judge McIntyre just dismissed it with prejudice. And if you review the transcript, she was asking the same questions as counsel. And I can't emphasize enough, that's not appropriate under 2-6-15. It just isn't. You can't try the case there. And she did. I'm done, but could I just address one more issue that counsel for McDermott did? I'm going to concede counts 4 and 5. I re-pled them, because if you go look at Wackrow, Palmrose, those are my cases, right? I understand what the statute of limitation is. That's why I pled counts 4 and 5 the way I did, that the negligence occurred after the death, so it would not implicate 214.3B. And I rely on the Keefe case to say that they do have a duty, by virtue of the attorney-client relationships that existed. Mr. Novak said to you, Illinois law is clear, that an attorney doesn't have to tell his or her client about his or her own negligence. Illinois law is not clear. There is not one Illinois case that says that, period. In fact, it would go contrary to what the rules of professional conduct would require. The new rules of professional conduct, I think, pick up that point. They do. They do. And if they argue that the rules of professional conduct don't create a cause of action, LaGrange Bank v. Lowry, again, it's a case that I had, the rules of professional conduct can be used just like in a car accident you were speeding, well, you violated Rule 1.8, and it can support a professional negligence claim. And in Counts 4 and 5, we are not alleging their negligence because of the drafting. We are alleging their negligence because they failed to tell their clients, in derogation of their duty, of their negligence in drafting. It's a subtle difference, but it gets you around 214.3B. Thank you. It seems to me that you are presuming that in order to have the duty to inform that they were negligent, you have to presume that they were doing something against the wishes of the settler. Is that not correct? You have to plead, yes, Your Honor, your justice. Yes. Look, Bessel mentioned him, is that the estate plan was not done appropriately. Yes. No, what I said was it was done in derogation or despite what she said she wanted. My point is that people have the right to make asses of themselves, and if they decide that they want to pay a lot of taxes because they don't really care, because they want someone to get something and they don't want their husband to get it, then it's almost a breach for McDermott to do it differently than what she asked. So for you to come up and say that McDermott supposedly should have told your client that they were negligent, the only way they would be negligent is if they breached the duty. But if she told them that that's what she wanted, what's the duty that they breached? The duty to tell her that she's crazy and that they're not going to do it? I mean, this is the problem I'm having with your argument. The only thing I can say, and I agree with you, so I won't concede, but we didn't get that far. I don't know what Victoria Fitch was told, Your Honor, or Justice. I don't know what McDermott explained to her, and I don't know what McDermott said about the ramifications, and if she understood them. Not in the sense what she said. Well, if they file an affidavit that says that this trust estate is set up the way she asked and there's no one because apparently the husband wasn't privy to this and no one else other than Victoria was, how are you going to succeed to file counter-affidavits that says to the country? The son, Michael Fitch, was present at meetings. Oh, he was present at meetings? Yes. Oh, okay. He's been deposed because the case is ongoing as to certain counts, and it's outside the record here in all defense of some of these folks. I don't think any of them were at the deposition, but Michael Fitch testified that he was present and that the goal was to reduce taxes. And that's the problem I have on deciding it on this motion. If there are affidavits and counter-affidavits under 1005, then I'll take my licking. But to do it on this grounds, we're presuming that she did understand and that she did tell him to do this. That's not what's played. Thank you, counsel. Court will take the matter under advisement.